NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 190653-U

NO. 4-19-0653

IN THE APPELLATE COURT

FILED
August 3, 2021
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| JAYMAR Q. McGRONE, | ) | No. 15CF858 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | John M. Madonia, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Harris and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed the summary dismissal of defendant's postconviction petition where defendant failed to present the gist of a constitutional claim his sentence violates the proportionate penalties clause of the Illinois Constitution.

¶ 2    In April 2016, defendant, Jaymar Q. McGrone, pleaded guilty to one count of first degree murder (720 ILCS 5/9-1(a)(1) (West 2014)). The trial court accepted defendant's negotiated guilty plea and sentenced him to 27 years' imprisonment.

¶ 3    In June 2019, defendant filed *pro se* a postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)), alleging his sentence was unconstitutionally disproportionate as applied to him. The trial court subsequently dismissed defendant's petition as frivolous and patently without merit (725 ILCS 5/122-2.1 (West 2018)).

¶ 4       Defendant appeals, contending the trial court erred by summarily dismissing his *pro se* postconviction petition where his 27-year sentence violates the Illinois Constitution's proportionate penalties clause (Ill. Const. 1970, art. 1, § 11). Specifically, defendant argues his sentence shocks the moral sense of the community in light of the rapidly evolving standards of moral decency applicable to sentencing youthful offenders. We affirm.

¶ 5                                    I. BACKGROUND

¶ 6                    A. The State's Charges and Defendant's Guilty Plea

¶ 7       In August 2015, a grand jury indicted defendant with three counts of first degree murder (720 ILCS 5/9-1(a)(1), (3) (West 2014)) (counts I-III) and one count of aggravated battery with a firearm (720 ILCS 5/12-3.05(e)(1) (West 2014)) (count IV).

¶ 8       In April 2016, defendant entered a negotiated guilty plea to count I, which alleged defendant, without lawful justification, shot Jammario Lacey causing his death, knowing said act created a strong probability of death or great bodily harm. In exchange for defendant's guilty plea, the State agreed to (1) dismiss the remaining charges and an unrelated juvenile case pending against defendant, (2) amend the indictment to remove the firearm enhancement, and (3) recommend a sentencing cap of 30 years' imprisonment. Prior to accepting defendant's guilty plea, the trial court admonished defendant pursuant to Illinois Supreme Court Rule 402(a) (eff. July 1, 2012). Following the court's admonishments, the State presented its factual basis:

> "If this case proceeded to trial, the People would present testimony that on August 15, 2015, the Springfield Police Department was dispatched to the 1500 block of South 16th Street with a victim with injuries at the scene. That victim was identified as a Jammario Lacey. He was transported to St. John's Hospital, and he did die from those injuries.

"The Defendant was identified as a suspect. He did admit to police his involvement and that he did the acts which caused the death of Jammario Lacey.

He would be identified in this case, and all of these events occurred here in Sangamon County."

¶ 9                                B. Sentencing Hearing

¶ 10        In June 2016, the matter proceeded to sentencing. A presentence investigation report (PSI) indicated defendant was born in 1998. Thus, he was 16 years old when he murdered Lacey. Defendant's PSI revealed one prior juvenile delinquency adjudication for domestic battery and criminal damage to property, for which defendant received probation. With respect to education, the PSI noted defendant dropped out of the tenth grade in 2015, was a below-average student, and enjoyed wrestling, boxing, and basketball. Defendant described his childhood as normal but acknowledged being previously affiliated with a gang "known as Squad since he was 15 years of age." Defendant indicated he had strong relationships with his parents and siblings. Defendant denied any family history of mental or physical abuse.

¶ 11        In aggravation, the State argued a 30-year sentence was appropriate considering defendant's criminal history and "the deadly and tragic consequences of his actions." The State noted defendant's criminal conduct and contact with police, which involved "mob action, *** guns, [and] shooting," became "progressively worse until *** Defendant killed Jamario Lacey."

¶ 12        In mitigation, defense counsel asserted defendant's "judgment and ability to reason [were] affected by his tender age," and he "was not operating with the same ability to reason as *** someone who is in their mid to late 20's." Defense counsel argued provocation by Jarred Hammonds precipitated the shooting, where defendant "observed *** Mr. Hammonds pointing a firearm in [his] direction," while defendant walked by the victim's residence with his

friend. Defense counsel requested "a sentence in the low end of the range, certainly not in excess of 25 years," and asserted defendant had "tremendous potential to be restored to useful citizenship," given his young age.

¶ 13      Defendant made a statement in allocution expressing remorse and accepting responsibility for his conduct. Defendant stated, "I'm not saying this just to be talking my way out of this situation. I'm going to actually do my time and get my life together. When I go to DOC, I'm not going to cause any trouble or look for any trouble." Defendant did not view himself as a murderer, but instead, "as a kid who *** made a big mistake, and *** who wants out of the gang life forever."

¶ 14      In pronouncing sentence, the trial court considered (1) the PSI, (2) the factual basis, (3) factors in aggravation and mitigation, and (4) "the proffers regarding the circumstances of this entirely unnecessary crime." Regarding defendant's rehabilitative potential, the court stated it considered defendant's age, his development, "and the expectations of maturity just based on life's observations." Although the court agreed defendant acted under strong provocation, it disagreed the circumstances were unlikely to reoccur or that defendant was unlikely to commit another crime based on defendant's "character and attitudes, the criminal history, [his] travels through this justice system, [and] the numerous contacts with the police, multiple times involving violence." However, the court did not discount "counsel's argument that had [defendant] not been provoked in the manner that is far too common on the streets, this wouldn't have happened."

¶ 15      Ultimately, the trial court sentenced defendant to 27 years' imprisonment, noting it was "inclined to give [defendant] a little more credit than the State has." Defendant did not file

a motion to withdraw his guilty plea or otherwise appeal from the judgment entered upon his conviction.

¶ 16                                    C. Postconviction Proceedings

¶ 17            In June 2019, defendant filed *pro se* a postconviction petition pursuant to the Act (725 ILCS 5/122-1 *et seq.* (West 2018)). Citing *People v. Buffer*, 2019 IL 122327, 137 N.E.3d 763; *People v. Harris*, 2018 IL 121932, 120 N.E.3d 900; and *People v. Othman*, 2019 IL App (1st) 150823, 143 N.E.3d 32, defendant alleged, in relevant part, his 27-year sentence was unconstitutionally disproportionate as applied to him. Defendant argued his sentence did not provide any meaningful opportunity to obtain release based on demonstrated maturity, which defendant further alleged was "impossible" to demonstrate, as he was required to serve 100% of his sentence pursuant to the Truth in Sentencing Act (730 ILCS 5/3-6-3(a)(2)(i) (West 2016)).

¶ 18            In August 2019, the trial court entered a written order summarily dismissing defendant's *pro se* petition as frivolous and patently without merit. In addressing defendant's argument that his 27-year prison sentence was unconstitutional as applied to him, the court "consider[ed] this argument to be indisputably meritless when, as here, the Defendant readily accepted a plea with an expectation of receiving a recommended sentence of 30 years, and, in fact, received a sentence of less than that through this court's use of discretion." The court noted it "specifically acknowledged the Defendant's age and cooperation as significant factors in the Defendant's rehabilitative potential." Further, the court found "[d]efendant's petition fail[ed] to explain, in any meaningful manner, how his sentence was disproportionate as applied to him." The court found "[d]efendant's reliance on [*Othman*] to support this claim could not be more misguided. *** A sentence of 55 years such as the one imposed in *Othman* would have been

substantially similar to the one *** Defendant COULD have received IF the State had not made several concessions as a direct response to the Defendant's rehabilitative potential."

¶ 19 This appeal followed.

¶ 20 II. ANALYSIS

¶ 21 On appeal, defendant argues the trial court erred by summarily dismissing his *pro se* postconviction petition. Defendant asserts the petition presents the gist of a meritorious claim his 27-year sentence violates the Illinois Constitution's proportionate penalties clause (Ill. Const. 1970, art. 1, § 11). Specifically, defendant argues his sentence shocks the moral sense of the community in light of the rapidly evolving standards of moral decency applicable to sentencing youthful offenders, as evidenced by section 5-4.5-105 and section 5-4.5-115 of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-4.5-105(a) (West 2016); 730 ILCS 5/5-4.5-115(b) (West Supp. 2019)). In response, the State contends defendant waived his argument and the trial court properly dismissed defendant's petition as frivolous and patently without merit.

¶ 22 A. The Post-Conviction Hearing Act

¶ 23 The Act "provides a procedural mechanism through which criminal defendants can assert that their federal or state constitutional rights were substantially violated in their original trials or sentencing hearings." *People v. Buffer*, 2019 IL 122327, ¶ 12, 137 N.E.3d 763. A proceeding under the Act is a collateral proceeding and not an appeal from the defendant's conviction and sentence. *People v. English*, 2013 IL 112890, ¶ 21, 987 N.E.2d 371. The defendant must show he suffered a substantial deprivation of his federal or state constitutional rights. *People v. Caballero*, 228 Ill. 2d 79, 83, 885 N.E.2d 1044, 1046 (2008).

- 6 -

¶ 24　　　　　The Act establishes a three-stage process for adjudicating a postconviction petition. *English*, 2013 IL 112890, ¶ 23. Here, defendant's petition was summarily dismissed at the first stage. At the first stage, the trial court must review the postconviction petition and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2018). This is an independent assessment of the substantive merit of the petition. *People v. Harris*, 224 Ill. 2d 115, 125-26, 862 N.E.2d 960, 967 (2007). If the court finds the petition is "frivolous" or "patently without merit," the Act requires that the court dismiss it, and this dismissal is a final order. 725 ILCS 5/122-2.1(a)(2) (West 2018). A petition is frivolous or patently without merit when its allegations, taken as true and liberally construed, fail to present the gist of a constitutional claim. *People v. Edwards*, 197 Ill. 2d 239, 244, 757 N.E.2d 442, 445 (2001). A petition may be dismissed as frivolous or patently without merit "only if the petition has no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 12, 912 N.E.2d 1204, 1209 (2009). "A petition lacks an arguable basis in law when it is grounded in 'an indisputably meritless legal theory,' for example, a legal theory which is completely contradicted by the record." *People v. Morris*, 236 Ill. 2d 345, 354, 925 N.E.2d 1069, 1075 (2010) (quoting *Hodges*, 234 Ill. 2d at 16). It "lacks an arguable basis in fact when it is based on a 'fanciful factual allegation,' which includes allegations that are 'fantastic or delusional' or belied by the record." *Morris*, 236 Ill. 2d at 354 (quoting *Hodges*, 234 Ill. 2d at 16-17).

¶ 25　　　　　Our review of a first-stage dismissal of a postconviction petition is *de novo* (*Buffer*, 2019 IL 122327, ¶ 12), affording no deference to the trial court's judgment or reasoning. *People v. Walker*, 2018 IL App (1st) 160509, ¶ 22, 128 N.E.3d 978.

¶ 26　　　　　　　　　　　　　　　B. Waiver

¶ 27        Citing *People v. Johnson*, 2019 IL 122956, 129 N.E.3d 1239, the State contends defendant waived his claim by entering a negotiated guilty plea. The State posits that under Illinois Supreme Court Rule 604(d) (eff. July 1, 2017), defendant "cannot seek reduction of his sentence but is limited to withdrawing his plea."

¶ 28        "The timely filing of a motion to withdraw a plea pursuant to Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) 'is a condition precedent to an appeal from a judgment on a plea of guilty.' " *People v. Robinson*, 2021 IL App (4th) 200515, ¶ 11 (quoting *People v. Flowers*, 208 Ill. 2d 291, 300-01, 802 N.E.2d 1174, 1180 (2003)). "A defendant's failure to comply with the rule does not deprive us of jurisdiction, but it does preclude us from considering the appeal on the merits." *Robinson*, 2021 IL App (4th) 200515, ¶ 11. "Where a defendant has failed to file a written motion to withdraw his plea of guilty or to reconsider his sentence, the appellate court must dismiss the appeal ([citation]), leaving the *** Act as the defendant's only recourse ([citation])." *Flowers*, 208 Ill. 2d at 301.

¶ 29        Rule 604(d) provides, in relevant part:

> "No appeal shall be taken upon a negotiated plea of guilty challenging the sentence as excessive unless the defendant, within 30 days of the imposition of sentence, files a motion to withdraw the plea of guilty and vacate the judgment. For purposes of this rule, a negotiated plea of guilty is one in which the prosecution has bound itself to recommend a specific sentence, or a specific range of sentence, or where the prosecution has made concessions relating to the sentence to be imposed and not merely to the charge or charges then pending." Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

¶ 30 In *Johnson*, 2019 IL 122956, ¶ 4, the defendant entered into a negotiated plea agreement where the State agreed to dismiss certain counts and cap its sentence recommendation on the remaining charges. The trial court sentenced the defendant within the sentencing range under the plea agreement. *Johnson*, 2019 IL 122956, ¶ 4. Proceeding *pro se*, the defendant filed a motion to reduce his sentence, and he was later granted leave to file an amended motion to withdraw his plea. *Johnson*, 2019 IL 122956, ¶ 12. The trial court denied the defendant's motions. *Johnson*, 2019 IL 122956, ¶ 14. On appeal, the defendant argued "he need not withdraw his plea where the trial court erred in sentencing him" because the court allegedly relied on two improper statutory aggravating factors inherent in his drug offense, including the harm caused by his conduct and the compensation he received for committing the offense. *Johnson*, 2019 IL 122956, ¶ 16.

¶ 31 The supreme court reiterated that, pursuant to Rule 604(d), a defendant who enters into a plea where the State makes sentencing concessions is bound by that plea unless the defendant first moves to withdraw it. *Johnson*, 2019 IL 122956, ¶¶ 46-47. The *Johnson* court concluded this rule applies regardless of whether the claimed error was an excessive sentence or whether it was alleged the court relied upon improper sentencing factors during sentencing. *Johnson*, 2019 IL 122956, ¶¶ 39-41. The court further noted the defendant's recourse under Rule 604(d) was to seek to withdraw the plea and return the parties to the status quo. *Johnson*, 2019 IL 122956, ¶¶ 47, 57.

¶ 32 However, we find *Johnson* distinguishable, as the supreme court did not examine the applicability of Rule 604(d) in the context of a postconviction proceeding, and find this case more closely resembles *People v. Miranda*, 329 Ill. App. 3d 837, 769 N.E.2d 1000 (2002).

¶ 33        In *Miranda*, the defendant was found guilty and sentenced in absentia for possession of a controlled substance with intent to deliver. *Miranda*, 329 Ill. App. 3d at 839. Later, she was arrested, charged with violation of bail bond, pleaded guilty to that offense, and was sentenced thereon. *Miranda*, 329 Ill. App. 3d at 839. The defendant did not move to withdraw her guilty plea and only filed a direct appeal from her drug conviction. *Miranda*, 329 Ill. App. 3d at 839-40, 841. She then filed a postconviction petition alleging there was no factual basis for her guilty plea for violating bail bond and her trial counsel was ineffective for advising her to plead guilty where no factual basis existed. *Miranda*, 329 Ill. App. 3d at 840. The trial court denied the petition, and the defendant appealed. *Miranda*, 329 Ill. App. 3d at 840-41.

¶ 34        On review, the State argued the defendant waived her challenge by failing to file a motion to withdraw her guilty plea pursuant to Rule 604(d). *Miranda*, 329 Ill. App. 3d at 841. The First District found the State's argument "misplaced," as "Rule 604(d) does not apply in post-conviction proceedings." *Miranda*, 329 Ill. App. 3d at 841. Therefore, the defendant "ha[d] not waived her claims solely because she failed to file a motion to withdraw her guilty plea." *Miranda*, 329 Ill. App. 3d at 841.

¶ 35        One year later, our supreme court reached a similar conclusion. In *Flowers*, the defendant pleaded guilty to seven counts of forgery in exchange for the State's agreement to recommend she serve concurrent four-year prison sentences on each charge. *Flowers*, 208 Ill. 2d at 294. Prior to accepting her plea, the trial court admonished the defendant it would not be bound by the State's recommendation and subsequently imposed concurrent five-year sentences. *Flowers*, 208 Ill. 2d at 294-95. The defendant did not file a motion to withdraw her guilty plea and vacate the sentences. *Flowers*, 208 Ill. 2d at 296. Instead, the defendant *pro se* filed a postconviction petition alleging she was denied the effective assistance of counsel. *Flowers*, 208

Ill. 2d at 296-97. The supreme court explained that "[h]ad those proceedings simply moved forward, the case would have been routine and unremarkable, at least from a procedural standpoint." *Flowers*, 208 Ill. 2d at 302. However, while the petition was still pending, the defendant's court appointed counsel filed a motion pursuant to Rule 604(d) seeking reconsideration of her sentences, over a year after their imposition. *Flowers*, 208 Ill. 2d at 297. Following the trial court's denial of her motion to reconsider, the defendant filed *pro se* a notice of appeal and withdrew her postconviction petition. *Flowers*, 208 Ill. 2d at 297.

¶ 36        Although the supreme court ultimately concluded the trial court lacked jurisdiction to address the merits of the defendant's motion to reconsider, it noted the defendant was entitled to seek relief under the Act, which she did. *Flowers*, 208 Ill. 2d at 306. The court found the defendant's Rule 604(d) motion had no effect in the context of her challenge under the Act, because "[t]he requirements of Rule 604(d) are inapplicable to postconviction proceedings." *Flowers*, 208 Ill. 2d at 302. Thus, the defendant was "not required to file [a] motion under [Rule 604(d)] in order to pursue her postconviction claims." *Flowers*, 208 Ill. 2d at 302.

¶ 37        Here, despite entering a negotiated guilty plea, defendant did not waive his postconviction claims solely because he failed to file a motion to withdraw his guilty plea pursuant to Rule 604(d). As stated above, the requirements of the rule do not apply in postconviction proceedings (see *Miranda*, 329 Ill. App. 3d at 841), and as a result, defendant was not required to file a motion pursuant to Rule 604(d) in order to pursue the claims raised in his postconviction petition. *Flowers*, 208 Ill. 2d at 302. Therefore, we turn to the merits of those grounds which are properly before us on appeal.

¶ 38                              C. Proportionate Penalties Clause

¶ 39　　　　"The Eighth Amendment's prohibition of cruel and unusual punishment 'guarantees individuals the right not to be subjected to excessive sanctions.' " *Miller v. Alabama*, 567 U.S. 460, 469 (2012) (quoting *Roper v. Simmons*, 543 U.S. 551, 560 (2005)). "That prohibition includes not only inherently barbaric penalties but also disproportionate ones." *People v. Lusby*, 2020 IL 124046, ¶ 32. Additionally, the Supreme Court has determined that " 'children are constitutionally different from adults for purposes of sentencing.' " *Lusby*, 2020 IL 124046, ¶ 32 (quoting *Miller*, 567 U.S. at 471).

¶ 40　　　　Article I, section 11, of the Illinois Constitution provides, "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. To that end, a sentence violates the proportionate penalties clause if it is " 'cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community.' " *People v. Gomez*, 2020 IL App (1st) 173016, ¶ 30, 166 N.E.3d 289 (quoting *People v. Miller*, 202 Ill. 2d 328, 338, 781 N.E.2d 300, 307 (2002)). "We may determine whether a sentence shocks the moral sense of the community by considering both objective evidence and 'the community's changing standard of moral decency.' " *People v. Moore*, 2020 IL App (4th) 190528, ¶ 31 (quoting *People v. Hernandez*, 382 Ill. App. 3d 726, 727, 888 N.E.2d 1200, 1202-03 (2008)). Stated differently, this court reviews "the gravity of the defendant's offense in connection with the severity of the statutorily mandated sentence within our community's evolving standard of decency." *Miller*, 202 Ill. 2d at 340.

¶ 41　　　　Defendant concedes he is not serving a sentence of life imprisonment or even a *de facto* life sentence. See *Buffer*, 2019 IL 122327, ¶ 41 (holding that for juveniles, "a prison sentence of [more than] 40 years *** constitute[s] a *de facto* life sentence in violation of the eighth amendment"). Defendant further concedes section 5-4.5-105, which requires a trial court

to consider an additional list of mitigating factors at a juvenile's sentencing hearing, and section 5-4.5-115 of the Unified Code do not apply retroactively to his sentence. See 730 ILCS 5/5-4.5-105(a)(1)-(9) (West 2016); see also 730 ILCS 5/5-4.5-115(b) (West Supp. 2019) (establishing parole review for juvenile offenders convicted of first degree murder who were sentenced on or after June 1, 2019). Nevertheless, defendant suggests these statutory enactments illustrate "that the standards applicable to sentencing youthful offenders have changed since [he] was sentenced which shows his claim has legal merit." However, in this case the record shows the trial court considered the requisite factors relevant to the changing standards applicable to sentencing youthful offenders when sentencing defendant.

¶ 42        This court examines sentencing proceedings to ensure the trial court made an informed decision considering the totality of circumstances. See *Lusby*, 2020 IL 124046, ¶ 35. In *Lusby*, our supreme court rejected the defendant's assertion that "the trial court made only a generalized statement about the poor judgment of adolescents" and "considered almost no information about him as a unique, individual human being." (Internal quotation marks omitted.) *Lusby*, 2020 IL 124046, ¶ 31. The supreme court reviewed what information was before the trial court, including the evidence presented at trial, the PSI, evidence presented at sentencing, the parties' arguments at sentencing, and the defendant's statement in allocution. *Lusby*, 2020 IL 124046, ¶¶ 31, 36-49, 52. We conclude a similar approach is warranted here.

¶ 43        In the present case, the trial court acknowledged the PSI, which revealed defendant was 16 years old at the time he murdered Lacey, came from a seemingly stable family, was a below-average student, and had a criminal history. The court did not discount "counsel's argument that had [defendant] not been provoked in the manner that is far too common on the streets, this wouldn't have happened," and knew the offense may very well have resulted from

- 13 -

peer pressure or impulsive behavior. These same facts would have also apprised the court of defendant's rehabilitative potential. Although defendant denied any current gang affiliation, the court was aware defendant had been affiliated with a gang "known as Squad since he was 15 years of age." Such affiliation would certainly suggest negative influences, a lack of control over his environment, and a potential lack of ability to extricate himself from crime-producing settings. Despite his conduct, the court considered defendant's age, his development, "and the expectations of maturity just based on life's observations." Moreover, in imposing a sentence just seven years above the minimum authorized by statute (see 730 ILCS 5/5-4.5-20(a)(1) (West 2014)) and three years below the maximum agreed-upon sentencing cap, the court clearly found defendant was not irretrievably depraved.

¶ 44       Yet, defendant chose to secure a firearm and engage in a gratuitous act of violence by shooting the victim, causing his death. Additionally, the trial court expressly stated it considered the circumstances of the offense but disagreed such circumstances were unlikely to reoccur based on defendant's "character and attitudes, the criminal history, [his] travels through this justice system, [and] the numerous contacts with the police *** involving violence." The court also considered defendant's statement in allocution accepting responsibility for his conduct, and stated, "I really hope you meant it."

¶ 45       Defendant's sentence does not shock the moral sense of the community, and the trial court made explicit findings defendant's age and cooperation were "significant factors" with respect to his rehabilitative potential. "[A] prison sentence of 40 years or less imposed on a juvenile offender provides some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." (Internal quotation marks omitted.) *Buffer*, 2019 IL 122327, ¶ 41.

For these reasons, we cannot conclude defendant presented the gist of a constitutional claim his

27-year sentence violates the proportionate penalties clause of the Illinois Constitution.

¶ 46                                 III. CONCLUSION

¶ 47            For the reasons stated, we affirm the trial court's judgment.

¶ 48            Affirmed.